Case number 221487, Rhiannon Nugent et al. versus Spectrum Juvenile Justice Services et al. Oral argument not to exceed 15 minutes per side. Mr. Marco, you may proceed for the appellants. Thank you. Good morning, your honors. May it please the court, Jonathan Marco on behalf of the plaintiff, appellant, the estate of Juan Quintana II. I would like to reserve three minutes for rebuttal, your honors. Your honors, for over 30 years this circuit has held that private detention centers and juvenile justice facilities are state actors for purposes of 1983. For over 30 years this circuit has also held that a detention center that privatizes its medical care for detainees, those private actors are state actors. Despite that, and despite us pleading in an elaborate complaint which included the contracts, photos that my photographer had taken through a personal inspection, court-ordered inspection of the facility, as well as a journal attached to Exhibit 3, the district court on a 12B6 motion, without relying on any case law on point from this circuit, held that we had not plausibly alleged that the defendant, juvenile justice center, was a state actor. And so I would ask that this court reverse the district court. Mr. Quintana was 15 years old. He was placed in... Can I ask, it matters not so much for the state actor point, but for the elements of the cause of action. What was Mr. Quintana in the facility for? Because the Eighth Amendment applies to punishment. And we historically said it applied the same way to pre-conviction and post-conviction. But we have a recent line of case law that suggests it's an easier standard, a less onerous standard, if a person is in a facility and hasn't been convicted of a crime. So pre-trial detainees. And I would imagine that would apply to the decedent here if he was in this facility for non-punitive reasons. But the complaint doesn't articulate what the reasons were for why he was in this facility. So I don't even know what law necessarily applies. Yes, Judge Murphy, and thank you. And I apologize for my inartful drafting of the complaint below. But we both know that Mr. Quintana was in the facility because he was a minor and he had alcohol and marijuana. And he had a circuit court judge in Michigan determine that he got in a fight with his parents. And no one was hurt, but he violated him, basically. There wasn't a... In the juvenile context, I would analogize to juvenile charges and an adjudication of guilt. So there was nothing like that. It was just pure, almost like what you would call civil confinement. I believe he was, and I might be mistaken, but I believe that he was on some type of probation period. And then he violated by using marijuana and alcohol. He had a party at his grandmother's house and his parents called the police because there was an altercation at the home when he was confronted. And the police came. It came before a judge. The judge ordered the parents not to use alcohol and they ordered that one be confined and sent to this juvenile justice facility. So what do we do with the fact? That very well may... It's a recent line of precedent. It very well may trigger our less onerous rules for determining liability. So this is now in the merits. I apologize for moving there. But you kind of concede that the Eighth Amendment rules apply. So I suppose, do we have to follow the Eighth Amendment rules or are we allowed to follow this new line of precedent? I think part of the problem was we were based on just a complaint alleging in the complaint stage at 12B6. So it certainly would be free to amend below in light of recent developments in the law and defects in the pleadings. Unfortunately, we were at a stopgap just based on the pleadings on the state actor issue. We couldn't do anything. But certainly, I think that we could amend and clarify that below, whether by motion or clarification of the facts once we had discovery in this case. Okay. So the complaint does allege that Mr. Quintana was ordered to the facility by a judge? Yes, Your Honor. On paragraph 12 of our complaint, he was court ordered on August 24th, 2018. And this is a lockdown facility. I would like to differentiate this from the Father Maloney case that was cited by the defendants. In that case, it was a farm with horses and these children were not in custody or detainment there, which is much different than here. The custody and detainment, whether of adults or juveniles, has always been a state function. It's been recognized as such by the Supreme Court and by this Court. Well, I mean, the cases that you cite say that in dicta. But what is your best case that has actual holding that a juvenile detention and rehabilitation facility is traditionally a state function and therefore, when a private actor does it, that private actor shall be deemed a state actor? What case actually held that? The cases you cite to me, they do say that. But in my view, that's not the holding of the case. What's the best case you have that has a holding of that? So Skelton v. Pryor, Inc., it regards adults. Yeah. And adults are much different than juveniles, aren't they? That's correct. But for purposes of a public function and for traditionally reserved public function of the state, I don't think there's a distinction. Oh, I think there's a big distinction how states traditionally treat the incarceration or rehabilitation of juveniles from adults. In fact, it's an evolving standard right now. I mean, to say that they're equivalent, I think it's a real stretch. Well, they're functionally, if you look at Johnson v. Williams, now it's a district court case. It's not a Sixth Circuit case. I didn't find a Sixth Circuit case. Okay, that's the best authority you could come up with is a district court case? I cited you cases from other circuits. I was not able to find a case from this circuit directly on point. And neither were the defendants. The defendants weren't able to cite a Sixth Circuit case. Okay, now that troubles me, too, because you're bringing this under 42 U.S.C. 1983. If you look at the text of the statute, and I am a textualist. I think my colleagues probably are, too. We interpret statutes consistent with the text. Does the text of 1983 apply to private entities? If there's a state actor, Your Honor. Yeah, I don't, state actor. Does it say? It says state actor, or it actually says states and subdivisions of the state, right? It doesn't say and private entities that we can treat in fiction as being the equivalent of a state. I understand. You know what I'm talking about? I know what you're talking about, Your Honor. Okay, so if we apply the text, you lose. But I recognize the Supreme Court has decisions that expand the text to include other things that the justices have actually written into the text. That they also say these extra textual actors or categories should be narrowly applied. And I just question, there's not a Supreme Court case on this issue. Should we defer to the Supreme Court? If they're going to do this doctrine and change the text of something that Congress passed, why should we do it? The Supreme Court has said in the West case that if a justice facility contracts with a private actor, such as a doctor, that they are a state actor for purposes. I know. I don't think it's consistent with the text. I recognize that's what they've held, and I follow their precedent. Just like I follow yours, Judge. I know, I know. But I guess I'm reluctant to expand things that are not in a statute more than the Supreme Court has. And that's one of the problems I have here. If you had a Supreme Court case on point, we'd have to follow it. If you had a Sixth Circuit case on point for the holding as opposed to dicta, we'd have to follow it. But when you want us to expand something that's really not in the text of the statute, I think it's just a higher burden, at least for me. I understand your concern, Your Honor. I do not view it as an expansion of the law that's already been on the books for over 30 years in this circuit. I just don't see it. And I understand that you're drawing a distinction between juveniles and adults, but this circuit has held that there's even greater protections and greater findings of state action for juveniles than there are for adults. For example, in regulated foster care homes. And I've cited the cases on that in METER. They have said that children who are mandated by the state, and that's the key, if the state mandates them to a regulated foster home, that there can be state action for purposes of 1983. Now, you mandate an adult to a halfway house, you don't have those protections. So if you're going to draw a distinction, if the case law supports very clearly there's stronger protections, not less protections. And I would point out to you that in this district court case, this Johnson v. Williams, the district court in the Eastern District of Michigan, the same district court as here, explained the reason for these juvenile detention facilities. It's mandated by the state of Michigan under the Social Welfare Act to MDHHS. They are mandated by the state to run these juvenile detention centers, similar to the Department of Corrections runs it for adults. I don't really see there being a difference there in terms of the public function test, given the evolution of the law. Now, I understand your concerns. I have to follow the law just like we all do. But this was clear, in my mind at least, with regard to the precedent on this and the protection of these children. And remember, this was a 12B6 stage. The only question was, yes. Let me just ask you, I want to follow up on what I was starting to ask you about earlier. So, the order to the facility, does the judge order all the people who go to this facility? I guess it's not in your complaint, is it? Yes, and it's in the contract that I attached to the complaint. So, all the residents of this facility are being ordered there by the court. Yes, sir. Now, let me ask you this. How do they get out? So, they have to be let out by a court. A court has to order their coming out. Where in the complaint is that allegation? Well, it's attached. I guess it's not in the complaint. It's an attachment? I guess it's not. The explanation of the contractual obligations is Exhibit 2. Exhibit 2. For example, they have to follow Juvenile Justice Treatment Program guidelines. That's on page 4 of the complaint. The treatment is only for criminality. That's page 7, subsection I. So, everyone there has been convicted in a juvenile court of something? Everyone in the general residential unit of this facility has been adjudicated by a court of a criminal action. They are not placed there by their parents. If you look at the Doe case, which I understand is... Yeah, so this is a more stringent environment than that Eighth Circuit case you're saying? Absolutely. And I attached... If you look at the photo... This also sounds like it's more stringent than the Haven case. It is more stringent because you can only be there by a court. And you can only be there if you committed a crime. This isn't like I'm concerned about my son, he's having emotional problems, and I need to get him help and this facility will take him in the general population. The contract which was attached to the complaint is very specific.  By a court. Released by a court. Do you have anything in your complaint about the length of time that he had been sentenced to be at this facility? So, we don't know when he was going to be let out. What happens is they have to go back to the court. The facility arranges transportation like a prison transport. The facility then provides updated documents to the court. And then the sitting circuit court judge can basically say it's time for you to get out. He was court ordered on August 24th, 2018. The incident occurred in September of 2018. So, the facility has influence on how long somebody can stay there, but the court ultimately holds the keys to the castle. So, this would be different than a mental hospital because I think the doctors can let you out of a mental hospital. Yes. Even though you have to be committed by court order. That's correct. And if you look on the contract, which is... And my time is up, but I'll just answer this last question before I sit down if that's okay. There's five types of populations there. There's general population, which requires criminal conviction. That's Mr. Quintana. There's sex offender population. There is a treatment unit there, but that's a different... That's not this case. So, I'll save... I've got one other question. In the district court, when the defendant moved for summary judgment, it's my understanding that you opposed the motion for summary judgment in the district court by arguing that the public function test of a state actor. And that was the only test that you argued in the district court. Is that correct? That is correct. We did argue... We did cite cases that implicated the other, the entanglement theories. The courts use a lot of different names for the other tests. But that is correct that we did not brief it. I believe this is a public function test primarily. I believe you should decide this under public function because it's clear. So, it rises or falls on that theory, you would say? There is one case from this circuit that has held the entanglement theory or the joint action theory. And that case... But the problem is you didn't argue that theory in opposition to the motion for summary judgment. I mean, you just told me you did. I will concede that. I didn't think I needed to and I don't think I need to today. Thank you. Thank you, Your Honors. Good morning. Morning, Your Honors. Nathan Sherbroth on behalf of the appellees, Spectrum Juvenile Justice Services and Spectrum Human Services. May it please the court. I think it's important to keep focused on what's at issue here. And this is a 12B6 dismissal. We're looking at the complaint. And frankly, it just does not meet the plausibility standard under the public function test under Rickball and Twompley. The public function test is a narrow exception. Judge created exception to 42-1983 in that it can allow in limited circumstances private actors to be held liable under 1983. Could it be narrowly construed, the public function test? I believe it should. I mean, I remember hearing that language. I'm not sure it's from the Supreme Court or from our court, but is that the rule of construction for the... I believe it is because it's not in the text of the statute. You're looking at... That actually makes sense. I mean, that's one of our standard rules of construction, that if it's not in the text, if it's a judicially made doctrine that we don't usually interpret expansively, we usually construe it narrowly. That's correct, Your Honor. But does the state have to only use public employees to perform its functions? That's the problem I have, I suppose, with that argument, is that historically I think states used a lot of private actors to perform state functions. In a case called Filarski, Chief Justice Roberts went through these, how the post office could be just a partial post office and just a store. So it doesn't strike me as dispositive. The mere fact that as a matter of what we would view as employment law or agency law today, that they're private actors necessarily suggests that they're private actors for purposes of 1983. I mean, I could come up with all sorts of hypos where I assume you would agree that they would be state actors. If a state had all sorts of problems with its executions and it was like, let's delegate our executions to these private actors because they can perform it better, would you think that an execution of an inmate who had committed a capital crime would be a public function? Absolutely, it would. Okay, well then, there we go. That is a traditional exclusive province of the state. And we've held that prisons, at least we have two cases in the adult context that have held that prisons are. Would you agree there? I would not agree fully because I think that the Richardson v. McKnight explanation of the historical issues, or the historical privatization of incarceration and detainment that dates back to the 1700s, and I can see that Richardson was on the issue of whether private prison guards were entitled to immunity. But I think the historical analysis still holds that even in the context of prisons, there's a historical basis for finding that this is not an exclusively public function. And that's the test. The test is that it has to be exclusively and traditionally a public function. And in this case, there's no allegation, even in the complaint, that this is an exclusively and traditionally public function. Well, there is an allegation that a court ordered this individual to the facility. And do you agree that all the residents at the facility were court ordered there, as was represented by opposing counsel? To my knowledge, they were. They were ordered there by counsel. And do you also agree that a court order was required for anyone to be discharged from the facility? Yes. Mr. Quintana could not be discharged on his own. Why isn't that a historic function? I mean, I'm not aware of any other situation where someone can be ordered to be in a place and detained for a long period of time and cannot be let out unless a court lets them out. I can't think of any other place other than a public facility that that would occur in. You have shoplifting, but that's a very momentary situation that that's been recognized private parties can do that. Or not shoplifting, but detaining shoplifters. But other than that, I can't think of any other instance where when someone's been ordered to go to some place, stay there, and they can't leave unless a court orders them to get out. I can't think of any other instance where that's not been considered state action. Well, the functional difference here, we are talking about the juvenile justice system versus the adult justice system. Is there any case saying a juvenile justice system with that kind of an arrangement run by a private entity is not? Is not a state actor. Not a state actor? Sure. I think that the Howell case is much closer. Yeah, but the Howell case, there was no allegation in that case that the court had ordered the people to be at that facility. So. I don't know if you would look back at their pleadings in that case. I did look back. I looked back at the district court's opinion in that case. And the district court opinion is very illuminating, I think, because it talks about the, let me just find the quote. The similarities to the present case are striking. They were housing delinquent youths. The complaint said that these youths were campus residents who were under the confinement and control of the defendant. Yeah, but is there anything saying that a court ordered them to the facility? The Kentucky Cabinet of Health and Family Services ordered them to the facility. It wasn't a court. It was not the court. But I think the key point is here. The facility is not the one that can decide. They don't have the power to detain them or to release them. The court retains that power. The power, and I think the Doe case is illustrative, actually, on that point. Oh, in the Haven case? Yes. You're saying that the cabinet had the power to let them out there? Correct. The allegation was that they were under the confinement and control of the defendant. So that was throughout the complaints. Because I think in the Haven case they were making a distinction between juvenile detention facilities and the Haven. Because they seem to be saying the Haven didn't have the ability to send the residents to a juvenile detention facility. Whereas here it seems like they're alleging it is the juvenile detention facility. It's that ultimate place you can go. Whereas in the Haven it seemed like to be more of a halfway place. But they said that you couldn't order them to go to the juvenile. Right. And Spectrum can't order them to the facility here either. Because it is the facility, isn't it? That's fair. You can't order them to go anywhere other than where you are. This is the only place you can go for the punishment. But it's not exclusively punishment. This is very different than a... I also asked you about that other point that we talked about. Is there not some sort of an adjudication of criminality for all the residents in order for them to be ordered to this facility? There is not as Mr. Marco... I thought he said that there was. He said that there are different units within this facility and that you can be in this facility... Oh, for the treatment unit you didn't have to be a judge to be a criminal. But for this individual you agree was a judge for criminal behavior. Yes, the complaint alleges he was ordered to this facility. No dispute there. But this is still a private child caring facility that... Was he actually convicted in juvenile court of something? I don't believe he was. Okay, so there is no conviction here, is there? No. There was a complaint of juvenile misconduct or delinquency or something. And the judge found that based upon the complaint that he needed to be sent to the facility. But there is no... I don't see how consistent with due process the judge could do that. How can you order someone confined without an adjudication of some... It's juvenile court. I mean he could order that he be removed from his parents and placed in a foster facility. And the foster parents would not be a state actor. They would be a private actor. I mean we're dealing with juvenile justice here, not criminal convictions. And that's why the sentence, or not the sentence, the confinement is indefinite. I mean that would be a violation of due process too. That if an individual is actually convicted and the sentence is... And you're going to stay there as long as the judge wants you to be there. It's the completion of the program. Right. That's why it's a rehabilitation. And the contract. And I think that's another reason to distinguish the treatment of the juveniles here from a traditional adult prison where they have a definitive term of imprisonment that they have to serve. Here this is more of a rehab facility. And whatever misconduct the juvenile did that he wasn't even convicted of, once he has been rehabbed according to the judge, he gets out. That's correct. So comparing this to adult prisons I think doesn't really apply. I agree, Your Honor. It's apples and oranges. And the contract I think really lays that out. The contract between the state and Spectrum says they're to provide residential foster care within the juvenile justice system. And they're supposed to provide independent living preparation, behavioral health services, psychiatric services of education, and daily recreational activity. This isn't punishment in you're serving two years for committing a crime. This is go to this program, rehab yourself, come back here when you've completed the program, and we'll get you back into society. It's just fundamentally different than an adult prison, which I still think is not a clearly exclusively public function. But even assuming it is, I think that... The public function test is that the plaintiff has to come forth with evidence that this defendant is doing what historically was a state function. In the state of Michigan, I guess, because this is in Michigan. And you're saying that they haven't done that here. They haven't alleged. They have a conclusory paragraph in the complaint that says that this is a state function, but they have no historical facts in the complaint, right? That's correct, Your Honor. And the judge looks at the complaint and says, does this plausibly allege the public function exception, which requires a historical analysis of whether historically this was performed exclusively by the state. And there is no such allegation in the complaint, right? There is not, Your Honor. And that's basically a paragraph... That's the end of the story, isn't it? I believe it is, and I believe under Marie v. American Red Cross... I've got a couple cases today that there was arguments about motions to amend the complaint. Was there a motion to amend the complaint here that was denied by the district court? There was not, Your Honor. They argued that they should have been sui sponte. Okay, this is the case. The judge should have sui sponte allowed them to amend the complaint, even though they'd never moved for it? Correct. They never submitted an amended complaint? They did submit an amended complaint. Okay. They amended it once after we filed an initial motion to dismiss. We said this hasn't plausibly pled public function. They filed an amended complaint that said virtually the same thing, and the judge dismissed. All right. Thank you. Unless the court has any other questions, I'll rest on my brief. Any further questions, Judge Bush? No. Thank you, Your Honor. All right, rebuttal? Three minutes? How many minutes do we have here? I didn't write it down. I would urge this court to look at page ID 395, which includes actual photographs of this facility. It is a jail facility. Now, we can use words like rehabilitation, which could also apply to the prison context, Your Honor. But this is a jail. The kids have to wear jail uniforms, similar to the DOC. They shower in public showers, similar to the DOC. They are locked in a small cell with a tiny mattress about this big, similar to the DOC. They don't have any of the freedoms that any ñ they're treated exactly like prisoners. And we pled that in the complaint. We pled that this is a prison. We pled that this is similar to a jail. And we pled that this was a public function. What do you do with McKnight? So I suggested that maybe our earlier cases would be binding. Do you think McKnight would change things with respect to ñ I'm blanking on our earlier case names now. But our cases that held even adult prisons were public functions. McKnight did suggest that historically private entities have run prisons. Should that affect things? With regard to Richardson v. McKnight, so that has been interpreted by this circuit as not applying for the public function test. And the McKnight court specifically said, Judge Murphy, that we are not deciding whether the defendant correctional facility in that case ñ It was only about qualified immunity. But why wouldn't the logic apply? Because this court, as well as just about every other circuit in this country, has said that these private justice facilities are state actors in light of McKnight. Because McKnight didn't address the state actor. It was simply, is there qualified immunity for ñ We don't have ñ maybe other circuits do. I don't think that we have a post-McKnight precedent reaffirming these cases. So McKnight was 1997. The Street v. Corrections Corp. of America was 1996. Skelton was 1991. But those have been followed by lower courts and haven't been challenged in that way since that time. And nobody has interpreted McKnight as applying to state actor. Because they specifically said, we are not doing that. We are not analyzing ñ Yeah, they said that. So the logic of both is, was a function historically undertaken exclusively by the state? And that's the public function test. And maybe whether you're entitled to qualified immunity, too. But it seems to me the historical analysis should apply equally. Judge Murphy, what they did was they recognized that throughout history, in certain places, the state had to rely on private entities to perform state functions. Similar to the execution example that was given. And that had nothing to do with the state actors I've already said. But they also analyzed in McKnight a history of finding liability for those private actors. If you read the opinion, they talk about how historically the courts have allowed liability against these governmentally hired private entities who are performing these traditionally public functions. The court simply said, yes, throughout history, private entities have done this. But it's always been a state function. And it remains that way today. And so I just would urge the court, page ID 395, because this is a state actor. And I would urge you to reverse the district court. Thank you. Any further questions? Judge Bush? All right. Thank you very much. Case will be submitted. I call the next case.